UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RICHARD STEVEN FRITZ,

    Plaintiff,

v.                                                        Case No: 6:18-cv-275-Orl-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## **OPINION AND ORDER**

Plaintiff, Richard Steven Fritz, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and Disability Insurance Benefits ("DIB"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number) and the parties filed a joint legal memorandum setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to 42 U.S.C. § 405(g).

    **I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

        **A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

**B. Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't. of Health & Human Servs*., 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that he is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *see* 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If he meets this burden, he will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work. 20 C.F.R. §§ 1520(a)(4)(iv), 1520(f). If the claimant can still perform his past relevant work, then he will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, he will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use

of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d at 1278 n.2.

### C. Procedural History

On February 2, 2007, Plaintiff filed an application for a period of disability and DIB, alleging disability beginning July 22, 2003. (Tr. 180, 395). Plaintiff's date last insured for disability benefits was December 31, 2008. (Tr. 403). Plaintiff's application was denied initially and upon reconsideration. (Tr. 176). On February 26, 2010, following an administrative hearing on September 4, 2009 (Tr. 133), an administrative law judge issued a decision finding Plaintiff not disabled. (Tr. 177). Plaintiff requested review of the decision and, on July 8, 2011, the Appeals Council remanded the case for a new hearing. (Tr. 196).

A second hearing was held on May 2, 2013. (Tr. 116), the administrative law judge issued a second Unfavorable Decision on June 12, 2013 (Tr. 202). On June 23, 2014, and again on November 12, 2014, the Appeals Council denied a request for review. (Tr. 236, 243). However, on January 6, 2016, the Appeals Council vacated its prior actions and remanded the case for a new hearing due to medical records from the wrong person that shared the same name as the Plaintiff being erroneous considered.

On September 23, 2016, a third administrative hearing was held before Administrative Law Judge Lissette Labrousse ("the ALJ"). (Tr. 74). Plaintiff amended the alleged onset date to October 11, 2005. (Tr. 436). On December 20, 2016, the ALJ issued a third Unfavorable Decision finding Plaintiff not disabled. (Tr. 49-73). Plaintiff requested review of the decision, which the Appeals Council denied on January 8, 2018. (Tr. 1).

Plaintiff initiated the instant case by Complaint (Doc. 1) on February 23, 2018. The parties, having filed a joint memorandum setting forth their respective positions, this case is ripe for review.

**D. Summary of the ALJ's Decision**

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from his amended alleged onset date of October 11, 2005, through his date last insured of December 31, 2008. (Tr. 51). At step two, the ALJ found that Plaintiff had a single severe impairment: spine disorder. (Tr. 51). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in "20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." (Tr. 54).

Before proceeding to step 4, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to

> perform less than a full range of sedentary work as defined in 20 CFR 404.1567(a). Specifically, the claimant could lift and/or carry ten pounds frequently, and twenty pounds occasionally, sit for six hours, and stand and/or walk for two hours, in an eight-hour workday. The claimant would need to alternate positions every hour for five minutes. The claimant could occasionally reach overhead, bilaterally. The claimant could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, and scaffolds. The claimant should avoid concentrated exposure to unprotected heights, moving mechanical parts, extreme heat and cold, vibrating surfaces and tools, dust, odors, fumes, pulmonary and irritants. Time off task to be provided by normal breaks.

(Tr. 54). At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a construction worker and general laborer. (Tr. 60).

At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numers in the national economy that Plaintiff

could have performed. Relying on the testimony of a vocational expert, the ALJ found that Plaintiff was capable of performing such jobs as document preparer, check weigher, and order clerk. (Tr. 61). The ALJ concluded that Plaintiff was not under a disability at any time from October 11, 2005, the amended alleged onset date, through December 31, 2008, the date last insured. (Tr. 61).

## II. Analysis

Plaintiff raises two issues on appeal: (1) whether the ALJ erred by failing to properly weigh the medical opinions of record based on an adequate rationale and substantial evidence at each step of the sequential evaluation process, and (2) whether the ALJ erred by according great weight to the opinion of consultative examiner Homi Cooper, M.D., despite already ruling that Dr. Cooper's opinion would be excluded from the record.

**A) Whether the ALJ erred by failing to properly weigh the medical opinions of record based on an adequate rationale and substantial evidence at each step of the sequential evaluation process.**

Plaintiff argues that the ALJ's RFC finding conflicts with the opinions of the treating pain management physician Todd Jaffe, M.D., one-time examining physician Krishna Vara, M.D., one-time examining psychologist Elizabeth Layton, Psy.D., and one-time examining psychologist Scott Kaplan, Psy.D. (Doc. 15 p. 18).

The Court begins with Plaintiff's argument concerning Dr. Jaffe. Plaintiff contends that the ALJ failed to provide good cause for rejecting the Dr. Jaffe's opinion on the basis that it is not supported by relevant evidence. (Doc. 15 p. 19). Further, Plaintiff argues that the ALJ incorrectly determined that Dr. Jaffe's opinion that Plaintiff qualified for disabled parking was an opinion on an issue reserved for the Commissioner. (Doc. 15 p. 19). Plaintiff argues that Dr. Jaffe did not offer an opinion as to disability, but rather found that Plaintiff was incapable of walking 200 feet

which is the criteria for issuing a disabled parking permit. (Doc. 15 p. 19). In response, Defendant contends that the ALJ properly rejected Dr. Jaffe's opinion that Plaintiff was unable to work and was therefore in need of a disabled parking permit. (Doc. 15 p. 33). Further, Defendant contends that the ALJ provided good cause for finding Dr. Jaffe's exertional limitations not entirely supported by the record. (Doc. 15 p. 33).

The record shows Plaintiff began pain management treatment from Dr. Jaffe's office in July 2004. On July 23, 2004, pain management specialist Dr. Todd Jaffe's physician's assistant noted Plaintiff reported burning, numbness and pain in the area of the left calf muscle (Tr. 756). He reported bony pain from the tibia resolved. However, it felt like there was a retained object within his muscle that was trying to work its way out. When walking, his calf tightens and shoots pain to the knee. He fell twice. Hot tub soaks help. Leg elevation helps (Tr. 756). On exam, Dr. Jaffe noted Plaintiff's left leg was one centimeter larger compared to the right leg (Tr. 757). There was tenderness to palpation of the calf muscle. Dr. Jaffe diagnosed leg pain and possible foreign object (Tr. 757). CT scan was normal (Tr. 762). On August 26, 2004, Dr. Jaffe indicated Plaintiff could return to work after his next office visit (Tr. 755). However, treatment notes for the next appointment, November 18, 2004, notate that Plaintiff did not show up and could return to light duty effective December 2004 (Tr. 754).

On December 30, 2004, Dr. Jaffe noted Plaintiff reported sitting, standing, and walking were "always painful" (Tr. 753). Dr. Jaffe prescribed Lidoderm patches for the pain. Dr. Jaffe also discussed Cymbalta (used to relieve nerve pain). Dr. Jaffe indicated Plaintiff could return to work and cautioned Plaintiff against prolonged standing (Tr. 753). An EMG of the left leg was normal (Tr. 764). On April 25, 2005, Dr. Jaffe indicated Plaintiff could return to work and cautioned against prolonged standing (Tr. 750).

On May 23, 2005, Dr. Jaffe noted Plaintiff continued to report left leg pain (Tr. 749). Plaintiff reported pain level remained about 7/10 with medication. Plaintiff reported his ability to sit varied and standing was limited to 10-15 minutes. Plaintiff reported not walking much. Plaintiff reported sleeping without interruption varied between 3 and 4 hours. Plaintiff reported the Cymbalta made him sick. Dr. Jaffe noted no changes in physical exam and diagnosed neuralgia. Dr. Jaffe opined Plaintiff was restricted from prolonged standing (Tr. 749). Dr. Jaffe indicated Plaintiff had reached maximum medical improvement and could return to work (Tr. 749).

On August 30, 2005, Dr. Jaffe noted on exam that Plaintiff's neuralgia in the left lower extremity remained the same (Tr. 747). Plaintiff reported pain level remained about 7/10 with medication. Plaintiff reported standing was limited to 10-15 minutes. He tried not to walk. Plaintiff reported taking "Cat Naps". Dr. Jaffe diagnosed neuralgia of the left lower extremity. Dr. Jaffe opined Plaintiff should not work until he received a spinal cord stimulator (Tr. 747).

On October 11, 2005, Plaintiff reported the pain remained about the same in the left leg at an intensity of 7/10 with medication (Tr. 746). Dr. Jaffe noted Plaintiff's reported tolerance for sitting varied. Plaintiff reported standing was limited to 10-15 minutes. Plaintiff explained that he tried not to walk. Dr. Jaffe noted the examination findings remained unchanged. Dr. Jaffe noted the spinal cord stimulator procedure had not been authorized by the insurance carrier. Dr. Jaffe opined Plaintiff's pain control was poor. Dr. Jaffe recommended a trial of Lyrica. Dr. Jaffe opined Plaintiff was off work permanent and total due to pain (Tr. 746).

On January 24, 2006, Dr. Jaffe recommended a series of trigger point injections for pain (Tr. 745). Dr. Jaffe noted Plaintiff's report that, "the more he uses his leg the worse the pain gets" (Tr. 745). Dr. Jaffe noted that Plaintiff could not work until after the injections (Tr. 745). Plaintiff received the injections on February 28, 2006 (Tr. 744).

Plaintiff reported a pain level of 3-5 on March 7, 2006, and 50% improvement for 3-4 days following his last injection (Tr. 742). On March 14, 2006, Plaintiff reported no improvement after the last trigger point injection (Tr. 741). Dr. Jaffe decided to try one more injection. If it is ineffective, Dr. Jaffe decided he would again request the insurance carrier authorize a Spinal Cord Stimulator (Tr. 741).

On May 2, 2006, Plaintiff reported to Dr. Jaffe a pain level of 6/10 in the left leg (Tr. 739). Dr. Jaffe reviewed the independent medical exam and distribution of pain. Dr. Jaffe opined the pain was not in the peroneal nerve dermatome. Instead, Dr. Jaffe opined the pain was sciatic, possibly the popliteal nerve. Therefore, Dr. Jaffe concluded Plaintiff was not a candidate for a peroneal nerve root block. Dr. Jaffe decided to again request authorization for a Spinal Cord Stimulator (SCS) or PNS trial (Tr. 739).

On April 17, 2007, Plaintiff saw Dr. Jaffe's assistant and reported continued pain at a 7/10 scale in his left leg and knee (Tr. 768). Plaintiff described pain as aching, burning, chronic, cramping, deep, dull, electric-like, excruciating, exhausting, pins and needles, radiating, sharp, shooting, and stabbing (Tr. 768). Plaintiff reported immobilization improves the condition, standing and walking worsen condition. Plaintiff stated his abilities to concentrate, complete household chores, leisure, mood, sex, sleep and work are all affected by the pain. Dr. Jaffe recorded that Plaintiff was not able to complete his activities of daily living independently, but then noted his daily activities were not affected (Tr. 768). On exam, Dr. Jaffe noted decreased neck range of motion, antalgic gait, shuffling gait, and uses cane to ambulate (Tr. 769). Straight leg raise test was positive with pain radiating to the left post, thigh, lateral leg and foot and positive with pain radiating to the right post, thigh, lateral leg and foot. Plaintiff's coordination was good and no neurological abnormalities were recorded (Tr. 769). Dr. Jaffe reviewed test and x-rays and

diagnosed (1) Degenerative Disc Disease in the cervical and lumbar spine; (2) Neuritis cervical, lumbar and sciatic; (3) Pain in the cervical and lumbar spine; (4) Peripheral neuropathy; and (5) Chronic Pain Syndrome (Tr. 769). Dr. Jaffe opined "[I] still believe SCS trial is medically necessary" (Tr. 769).

On April 17, 2007, Dr. Jaffe opined Plaintiff should lift less than 10 pounds (Tr. 603). Dr. Jaffe opined Plaintiff's maximum ability to stand and walk (with normal breaks) during an eight hour work day was less than a half hour. Dr. Jaffe opined Plaintiff's maximum ability to sit (with normal breaks) during an eight hour work day was about one hour. Dr. Jaffe opined Plaintiff must be able to shift at will from sitting or standing/walking (Tr. 603). Dr. Jaffe opined Plaintiff would need to lie down at unpredictable intervals during a work shift 3-4 times a day (Tr. 603). In support of his opinion, Dr. Jaffe cited positive MRI findings as well as EMG evidence of neuropathy (Tr. 604). Dr. Jaffe opined Plaintiff should never twist, stoop, crouch, climb stairs, climb ladders, or work overhead. Dr. Jaffe opined Plaintiff's ability to reach, push and pull were affected by the impairment (Tr. 604). Dr. Jaffe opined Plaintiff needs a cane to ambulate (Tr. 605). Dr. Jaffe opined Plaintiff would be absent from work more than seven times per month. Dr. Jaffe recommended a spinal cord stimulator for the chronic pain (Tr. 606). Dr. Jaffe opined Plaintiff had a HNP or canal stenosis causing pain, muscle spasm, and significant limitation of motion of the spine and radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss for more than 12 months (Tr. 606). Dr. Jaffe completed an Application for Disabled Parking Permit for Plaintiff, on which he opined Plaintiff was unable to walk 200 feet without stopping to rest and required a disable parking permit (Tr. 607).

In her decision, the ALJ reviewed the medical evidence from Dr. Jaffe and explained the weight she accorded his opinion as follows:

> Portions of these opinions by Dr. Jaffe and the physician's assistant were accorded some weight while others were accorded little weight (Social Security Rulings 06-3p and 96-2p). The doctor's opinion that the claimant was unable to work, and his opinion that the claimant was disabled (therefore in need of a parking permit), was an issue reserved to the Commissioner (Social Security Ruling 96-5p). It was accorded no weight because it was not supported by the relevant evidence. The exertional limitations were not fully supported. Except for his lumbar spine and left knee, the claimant's musculoskeletal range of motion was normal. The claimant was largely neurologically intact. Some postural limitations were supported for this reason, having a reduced range of motion for the lumbar spine and left knee. Further, the claimant's need to shift positions was supported.

(Tr. 59).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Commissioner of Social Security,* 631 F.3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)). The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has concluded that good cause exists when the: "treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

As a treating physician, Dr. Jaffe's opinion was entitled to great weight unless good cause was shown to the contrary. Here, the Court finds that the ALJ failed to provide good cause for according the opinion less than great weight. Upon review, it is unclear which parts of Dr. Jaffe's opinion were accorded "some weight" and which portions were not. The ALJ states that "the exertional limitations were not fully supported" but fails to provide an in-depth analysis with citation to the record, instead relying upon the general statement that Plaintiff's musculoskeletal range of motion was normal and that Plaintiff was neurologically intact. (Tr. 59). Further, the ALJ did not directly address Dr. Jaffe's opinions that Plaintiff needs a cane to ambulate and that Plaintiff would be absent from work more than seven times per month. These limitations that are not obviously accounted for in the RFC finding.

Finally, the ALJ improperly rejected Dr. Jaffe's opinion contained on the disabled parking permit. In her decision, the ALJ stated that Dr. Jaffe opined that Plaintiff "was disabled" and "therefore in need of a parking permit." (Tr. 59). A review of the application for disabled person parking permit form reveals that Dr. Jaffe indicated that Plaintiff needed a disabled person parking permit because severe limitations in his ability to walk due to an arthritic, neurological, or orthopedic condition makes him unable to walk 200 feet. (Tr. 607). Thus, Dr. Jaffe's opinion contained on the disabled permit application form was an opinion concerning Plaintiff's functional limitation, and not a general opinion that Plaintiff was "disabled." Upon remand, the ALJ shall re-evaluate Dr. Jaffe's opinions, state the weight accorded the opinions, and explain her decision with specificity.

As to the opinions of Dr. Vara, Dr. Layton, and Dr. Kaplan, the Court finds no error in the ALJ's analysis. As one-time examiners, their opinions were not entitled to any special deference. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (providing that a doctor who examines

a claimant on a single occasion is not considered a "treating physician"). The ALJ summarized the evidence from these sources and explained her reasoning in according them the appropriate weight she determined. Thus, the Court will not disturb the ALJ's findings as to these sources upon review.

### B) Whether the ALJ erred by according great weight to the opinion of consultative examiner Homi Cooper, M.D., despite already ruling that Dr. Cooper's opinion would be excluded from the record.

In her decision, the ALJ agreed to strike Exhibit 18F, which consisted of examination notes and a medical source statement completed by Dr. Cooper on October 16, 2009, because Dr. Cooper had relied on records that were not part of Plaintiff's file. (Tr. 719-30). Plaintiff argues that the ALJ erred by according great weight to this opinion despite striking it from the file. Plaintiff also argues that Plaintiff's should not have considered Dr. Cooper's 2012 opinion because it was not chronologically relevant.

The Court rejects Plaintiff's first argument. The ALJ's decision shows no indication that the ALJ considered the evidence from Dr. Cooper dated October 16, 2009. Instead, the ALJ only considered Dr. Cooper's RFC opinion dated June 22, 2012, which was contained in Exhibit 64F. Thus, Plaintiff is incorrect by stating that the ALJ considered and gave great weight to evidence that had been stricken from the record.

The Court finds Plaintiff's second argument persuasive. Dr. Cooper's June 22, 2012, exam was conducted three and a half years after Plaintiff's date last insured of December 31, 2008. The medical source statement form specified that "[t]he limitations above are assumed to be your opinion regarding current limitations only." (Tr. 1158). Further, the form contained a line inquiring "if you have sufficient information to form an opinion within a reasonable degree of medical probability as to past limitations, on what date were the limitations found above first

- 13 -

present?" (Tr. 1158). Dr. Cooper drew a slash through the response line. (Tr. 1158). Dr. Cooper's opinion in Exhibit 64F addresses Plaintiff's functional limitations at the time of the exam in 2012, not his condition during the relevant time period ending December 31, 2008. As this opinion does not relate back to the relevant time period, the ALJ shall not consider it upon remand.

**III.    Conclusion**

The decision of the Commissioner is **REVERSED AND REMANDED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on February 15, 2019.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties